IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **BIRDDOG SOLUTIONS, INC.,** | ) | **CASE NO. 8:06CV726** |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| **ATD-AMERICAN CO.,** | ) | |
| | ) | |
| Defendant. | ) | |

The matter before the Court is on the Defendant ATD-American Co.'s Motion to Dismiss for Lack of Personal Jurisdiction (Filing No. 6). The matter has been fully briefed and is ready for disposition. I have considered the parties' arguments and all of the evidence submitted. For the reasons stated below, the motion will be denied, and the Defendant will be ordered to file an Answer to the Plaintiff BirdDog Solutions, Inc.'s Complaint on or before Friday, April 20.

**Background**

BirdDog Solutions, Inc. ("BirdDog") originally filed this action against the Defendant ATD-American Co. ("ATD") in the District Court of Lancaster County, Nebraska, alleging that ATD entered into, and subsequently breached, a Parcel Shipping Optimization Service Agreement with BirdDog. ATD removed the case to this Court pursuant to this Court's diversity jurisdiction, and filed the current motion to dismiss, claiming that this Court lacks jurisdiction over ATD. ATD claims that: (1) it is a Pennsylvania corporation, with its principal place of business located in Pennsylvania; (2) it does not maintain an office in Nebraska, has never solicited any Nebraska residents or entities located in Nebraska, and does not employ persons in Nebraska; (3) the contract at issue in this litigation was

negotiated and signed in Pennsylvania; and (4) the services negotiated under the contract were not to be performed in Nebraska. (Filing No. 7 pp. 2–3).

BirdDog opposes the motion to dismiss, and asserts that: (1) in the last five years, ATD has sold its products to nearly 600 businesses, educational institutions, religious organizations, and government agencies located in Nebraska; (2) in the last six years, ATD has made sales totaling approximately \$1,350,000[1] to Nebraska individuals and entities; (3) ATD operates an Internet website[2] through which residents of Nebraska can create accounts, request quotes, place orders, and have products shipped to them; (4) approximately fifty Nebraska residents subscribe to and/or receive ATD's newsletter and special offers offered on ATD's website; and (5) ATD sends catalogs, mailers, special promotional offers, and other similar marketing materials directly to Nebraska residents. (Filing No. 18 pp. 2–3).

## Standard of Review

In order to survive ATD's Motion to Dismiss for Lack of Personal Jurisdiction, BirdDog need only make a prima facie showing of personal jurisdiction over ATD. *Digi-tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). The Court must view the evidence in the light most favorable to the Plaintiff BirdDog and must

---

[1]There is evidence before the Court that this total constitutes less than one-half of one percent of ATD's total sales. (Filing No. 19-4 p. 3).

[2]Although there is evidence that Nebraskans *can* create accounts, request quotes, place orders, and have products shipped to them via ATD's website, (Filing No. 19-5 p. 1), there is no evidence of the number of Nebraskans, if any, that *have* done those things. There is evidence before the Court that 0.8% of ATD's total sales are made through its website. (Filing No. 19-4 p. 3).

resolve all factual conflicts in its favor.  *Romak USA, Inc. v. Rich*, 384 F.3d 979 (8th Cir. 2004).

## Discussion

In determining whether this Court has personal jurisdiction over a nonresident defendant, two issues are presented: (1) whether the requirements of the Nebraska long-arm statute, codified at Neb. Rev. Stat. § 25-536 (Reissue 1995, Cum. Supp. 2006),[3] are satisfied, and (2) whether the exercise of jurisdiction over the defendant will violate the Due Process Clause of the Fourteenth Amendment.  *Minn. Mining & Mfg. Co. v. Nippon*

---

[3]The Nebraska long-arm statute provides:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb. Rev. Stat. § 25-536 (Reissue 1995, Cum. Supp. 2006).

*Carbide Indus. Co.*, 63 F.3d 694, 696–97 (8th Cir. 1995), *cert. denied*, 516 U.S. 1184 (1996). Because Nebraska's long-arm statute has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution, I turn to the constitutional question. *Quality Pork Int'l v. Rupari Food Servs., Inc.*, 675 N.W.2d 642, 649 (Neb. 2004). Thus, constitutional limits will dictate whether personal jurisdiction over ATD is proper.

"Due process for personal jurisdiction over a nonresident defendant requires that the defendant's minimum contacts with the forum state be such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The nonresident defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and it is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Purposeful availment" means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party. *Id.*

Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, such contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "fair play and substantial justice." *Id.* at 476. The

factors, as articulated by the Eighth Circuit Court of Appeals, are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)); *see also Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004). The fourth and fifth factors are of secondary importance and are not determinative. *Land-O-Nod*, 708 F.2d at 1340. In applying these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

It is the third factor of the above test—the relationship between the cause of action and the contacts—that gives rise to the distinction between specific and general jurisdiction. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within a forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993), *cert. denied*, 510 U.S. 814 (1993)). "General jurisdiction refers to the power of a state to adjudicate any cause of action and does not depend on the relationship between the cause of action and the contacts." *Burlington Indus.*, 97 F.3d at 1103. "In the exercise of general personal jurisdiction, the plaintiff's claim does not have to arise directly out of the defendant's contacts with the forum state if the defendant has engaged in 'continuous

5

and systematic general business contacts' with the forum state." *Brunkhardt v. Mountain W. Farm Bureau Mut. Ins. Co.*, 691 N.W.2d 147, 152 (Neb. 2005).

BirdDog does not present any particular argument that this Court has specific personal jurisdiction over ATD, and it appears that none of ATD's alleged contacts within Nebraska give rise to the action currently before this Court. Consequently, jurisdiction over ATD must be pursuant to this Court's general personal jurisdiction. The determination of whether business contacts are sufficient to convey general personal jurisdiction requires an analysis of all of ATD's business activities, including whether ATD makes sales in Nebraska; solicits or engages in business in Nebraska; serves Nebraska's markets; and has designated an agent for service of process, holds a license, has employees, or is incorporated in Nebraska. *See Higgins v. Rausch Herefords*, 609 N.W.2d 712, 718 (Neb. App. 2000).

Concerning the first and second *Land-O-Nod* factors, ATD argues the nature, quality, and quantity of its contacts to Nebraska are insufficient and that ATD could not reasonably anticipate being haled into court in Nebraska. ATD asserts that it is a Pennsylvania corporation, with its principal place of business located in Pennsylvania, and it does not maintain an office in Nebraska, has never solicited any Nebraska residents or entities located in Nebraska, and does not employ persons in Nebraska. Further, although there is evidence before the Court that ATD has made approximately $1,350,000 in sales in the last six years (one-half percent of ATD's total sales), ATD argues that this is not a substantial amount of sales for Nebraska. Finally, ATD argues that the Internet website that it maintains is not sufficient to permit a Nebraska court to assert personal jurisdiction over it.

I agree that the evidence concerning ATD's website, in and of itself, is not sufficient for this Court to extend general personal jurisdiction. Despite ATD's website being interactive and capable of creating accounts, requesting quotes, and placing orders, as the Eighth Circuit Court of Appeals found in *Lakin*, there is no indication in the record of the number of times that Nebraska consumers *have* accessed the website, the number of Nebraska consumers that *have* requested further information about ATD's services through the website, the number of accounts that *have* been created by Nebraska residents with the website, or the number of ATD representatives that *have* responded to questions of Nebraska residents asked via the website.[4]

However, BirdDog has presented evidence that over the last five years, nearly 600 individuals, businesses, government agencies, religious organizations, and other entities located in Nebraska have purchased services from ATD. Although the dollar amount of sales is relatively low, and constitutes a modest amount of ATD's total sales, conducting business with nearly 600 individuals and entities located in Nebraska in five years is fairly described as substantial. Similar to the finding of the court in *Lakin*, relationships with hundreds of individuals and entities located in Nebraska demonstrates continuous and systematic dealings with Nebraska.[5]

---

[4]There is evidence that nearly fifty Nebraska residents subscribe to and/or receive ATD's newsletter and special offers offered on ATD's website. However, this evidence alone is insufficient to satisfy the quantity of contacts of an Internet website analysis established in *Lakin*.

[5]I do note that the evidence demonstrates only that ATD has nearly 600 customers located in Nebraska, and not that ATD has conducted business with 600 Nebraska customers *in Nebraska*. However, BirdDog's burden at this stage in the litigation is to make a prima facie case against ATD, and the evidence is to be viewed in the light most favorable to BirdDog.

Additionally, the fourth and fifth *Land-O-Nod* factors support the exercise of personal jurisdiction over ATD.   It is undeniable that Nebraska has a strong interest in providing a forum for its residents[6] to seek redress when they have suffered significant harm as a result of another party's breach of contract, in this case alleged to be in excess of $90,000. Upon review of the evidence, I find nothing to demonstrate that it would be unduly burdensome for ATD to defend this action in Nebraska.

For the reasons stated, I find that ATD purposefully established minimum contacts with Nebraska, and I conclude that this Court's exercise over it comports with "fair play and substantial justice."  The Motion to Dismiss for Lack of Personal Jurisdiction will be denied.

IT IS ORDERED:

1. The Defendant ATD-American Co.'s Motion to Dismiss for Lack of Personal Jurisdiction (Filing No. 6) is denied; and

2. The Defendant ATD-American Co. shall file an Answer to the Plaintiff BirdDog Solutions, Inc.'s Complaint on or before Friday, April 20, 2007.

DATED this 4th day of April, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[6]BirdDog states that its primary place of business is in Nebraska, its operations headquarters and account management offices are located in Nebraska, and that eighty to eighty-five percent of its employees are employed in Nebraska.  (Filing No. 18 p. 2).