IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **BIRDDOG SOLUTIONS, INC.,** | ) | **CASE NO. 8:06CV726** |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| **ATD-AMERICAN CO.,** | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion for Partial Summary Judgment (Filing No. 37) submitted by Plaintiff BirdDog Solutions, Inc. ("BirdDog"), and the Motion for Summary Judgment (Filing No. 45) submitted by Defendant ATD-American Co. ("ATD"). For the reasons that follow, ATD's Motion for Summary Judgment will be granted and BirdDog's Motion for Partial Summary Judgment will be denied as moot.

**Background**

BirdDog, a Nevada corporation, originally filed this action against ATD, a Pennsylvania corporation, in the District Court of Lancaster County, Nebraska. BirdDog alleges that ATD entered into a "Parcel Shipping Optimization Service Agreement" (hereafter "Agreement") with BirdDog, and subsequently breached the Agreement by refusing to enter into a new carrier contract with United Parcel Services ("UPS"), thereby depriving BirdDog of its Service Fee under the Agreement. (Complaint, Filing No. 1; and Agreement at Exhibit A to Complaint). ATD removed the case to this Court pursuant to the Court's diversity jurisdiction.

BirdDog's Motion seeks summary judgment on the issue of ATD's liability to BirdDog under the Agreement, and asserts that further discovery is needed on the issue of damages only. ATD agrees that there is no genuine issue of material fact on the question

of liability, and seeks summary judgment in its favor as a matter of law. In response to ATD's Motion, BirdDog now asserts that there *are* genuine issues of material fact on the question of liability, precluding the Court from entering summary judgment. Although BirdDog's Complaint simply alleges that ATD breached the terms of the Agreement by refusing to enter into the proposed carrier contract that BirdDog negotiated with UPS, BirdDog now contends that ATD had an obligation to enter into a new carrier agreement with *either* UPS or FedEx, and that ATD breached an implied covenant of good faith and fair dealing.

## Facts

On or about December 28, 2005, ATD and BirdDog entered into the Agreement that is the subject of this action.[1] (Complaint ¶ 3; Answer, Filing No. 24, ¶ 3). The following excerpts from the Agreement are material for purposes of the pending motions:

> 1. **General**
> BIRDDOG is a parcel logistics management firm that endeavors to provide CUSTOMER with services to reduce parcel shipping expenses.
>     (a) <u>Negotiation Services</u>: CUSTOMER authorizes BIRDDOG to manage the contract-negotiation and contract maintenance process on CUSTOMER'S behalf. This process includes collecting and analyzing CUSTOMER'S current parcel shipping data, pricing and Carrier contracts; establishing negotiation parameters with the CUSTOMER; issuing Request For Proposals to the Carriers; collecting and analyzing the Carriers' responses to the Request For Proposal; negotiating pricing, terms and conditions with the Carriers; presenting Carrier proposals to the CUSTOMER. Final selection of

---

[1] ATD is referred to as "CUSTOMER" throughout the Agreement. The wording of the Agreement strongly suggests that it was drafted by BirdDog and not ATD, in which case any ambiguity should be resolved in favor of ATD. "To the extent that ambiguity does exist, the doctrine of *contra proferentum* requires that the language of a . . . contract be construed most strongly against the [party] that drafted it." *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.,* 616 A.2d 1192, 1196 (Del. 1992). Neither party herein has addressed that issue.

>a Carrier(s) is the CUSTOMER'S decision. Savings attributed to BIRDDOG'S contract negotiation with the carriers will be determined by establishing benchmark incentives currently being offered to CUSTOMER by the Carriers, less the new incentives achieved post negotiation with the Carriers and will be calculated each week based on CUSTOMER'S actual shipping. This benchmark will be mutually agreed upon by BIRDDOG and CUSTOMER prior to commencement of Carrier contract negotiations. . . . .

. . . .

For purposes of this Agreement, "Carrier(s)" shall mean United Parcel Service, Inc., FedEx Corporation and/or DHL International Ltd., together with their respective subsidiaries.

2. **Agency Designation**

CUSTOMER appoints BIRDDOG as its exclusive agent to negotiate Carrier(s) contracts and access shipping data and information related to parcel shipments made by CUSTOMER. In this capacity, BIRDDOG shall have all powers as may be necessary or expedient to carry out the purposes of, and the transactions contemplated in, this Agreement.

3. **Term**

The initial term of this Agreement is in effect for three (3) years from the date that the CUSTOMER executes a new agreement(s) with the Carriers, based on BIRDDOG's negotiating efforts. . . . .

. . . .

7. **Other**

>(a) This Agreement shall be governed by and construed in accordance with the law of the State of Delaware, without regard to the conflict of laws provisions thereof.

*'Attachment A'*

Service Fee

For providing the services set forth, BIRDDOG shall be paid forty percent (40%) of savings that the CUSTOMER derives from BIRDDOG's negotiation service and audit service.

For the purposes of calculating savings on BIRDDOG'S negotiating efforts with the Carrier(s), BIRDDOG and CUSTOMER agree that CUSTOMER'S current rates, incentives and terms will be used as a benchmark. CUSTOMER'S benchmark data will be used as the basis for calculating saving attributable to BIRDDOG'S negotiating service. A benchmark template . . . will be mutually agreed upon before services are rendered.[2]

---

[2] Whether or not any benchmark template was mutually agree upon does not appear to be at issue.

After the execution of the above Agreement, BirdDog negotiated with Carriers for parcel shipping services on ATD's behalf, obtaining a proposal from UPS.[3] (Affidavit of Ann Blaya-Arena, BirdDog's Vice President of Service Delivery, Filing No. 39, Ex. A, ¶ 7). (*Id.* ¶ 6). The UPS proposal would have saved ATD $84,244.84 annually. (*Id.* ¶ 8). ATD acknowledges that BirdDog forwarded a proposed UPS contract to ATD for ATD's approval, and that ATD analyzed the UPS proposal and rejected it. (ATD's Brief in Support of Its Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, p.2, ¶¶ 5-6, admitting paragraphs 6 and 8 of the Complaint).

## Standard of Review

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

---

[3] BirdDog has also submitted evidence that it negotiated with FedEx Corporation on ATD's behalf, obtaining a proposal from FedEx that would have yielded a smaller savings for ATD. The Complaint asserts a breach of the Agreement by ATD based only on ATD's refusal to enter into a new carrier agreement with UPS.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

### Discussion

BirdDog and ATD agree that Delaware law governs this contract dispute, as specifically stated in the Agreement.

BirdDog acknowledges that, under Delaware law, the general rule is that a broker of a given transaction may recover a commission only if the broker is the procuring cause of a consummated transaction. (Brief in Support of Plaintiff's Motion for Partial Summary Judgment, p.4, citing *B-H, Inc. v. Industrial America, Inc.*, 253 A.2d 209 (Del.1969)). BirdDog argues, however, that this case falls within an exception to the general rule, which

allows the recovery of a commission whether or not a transaction has been consummated "'if a duly authorized broker produces a prospect ready, willing and able to meet his principal's expressed terms'." *Id.*, quoting *B-H*, 253 A.2d at 213. BirdDog also relies on *Canadian Ind. Alcohol Co. v. Nelson*, 188 A. 39, 51-52 (Del. 1936), in which the Delaware Supreme Court said: "'When the broker has brought to his employer a purchaser willing and able to purchase at the price and on the terms authorized by the employer, the broker's work is done, and he is entitled to his compensation.'" (*Id.*, quoting *Tebo v. Mitchell*, 63 A. 327, 328 (Del. 1905)).

ATD does not take issue with BirdDog's statement of the applicable law, but argues that the Agreement did not contain express terms for any carrier contract, *e.g.*, the price of carrier services or the duration of the carrier contract. ATD also argues that the Agreement specifically reserved to ATD the power to select a carrier.

In response to ATD's Motion for Summary Judgment, BirdDog now asserts that ATD had an obligation to sign *one* of the carrier contracts that BirdDog negotiated on ATD's behalf, *i.e.*, the UPS contract *or* the FedEx contract.[4] BirdDog now also suggests that there *are* genuine issues of material fact on the question of liability. BirdDog has produced evidence that ATD is offering its customers the option of shipping goods via UPS, suggesting that ATD may have contracted with UPS without paying BirdDog's commission. (Affidavit of Richard J. Gilloon, Filing No. 47-6). BirdDog has also produced evidence that ATD is doing business with another carrier, C.H. Robinson Worldwide, Inc. (Filing Nos. 47-2 through 47-5). BirdDog suggests that ATD indirectly took advantage of BirdDog's

---

[4] It does not appear that BirdDog presented ATD with any proposed carrier contract on behalf of DHL International, Ltd., the third "Carrier" listed in the Agreement.

6

negotiation services by working with a carrier not listed on the Agreement. ATD has countered BirdDog's suggestions of ATD's wrongdoing with an affidavit of ATD's Controller, Thomas McIntyre (Filing No. 49-2) who testifies that ATD's current contract with UPS is the same one that existed prior to the Agreement between ATD and BirdDog, and that ATD's contract with C.H. Robinson is unrelated to the Agreement between ATD and BirdDog.

A contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings. *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.,* 616 A2d 1192, 1196 (Del. 1992). If a contract is not ambiguous, its construction is "purely a question of law." *Id.* at 1195. The Agreement in this case is not ambiguous. It simply authorized BirdDog to engage in certain negotiations on ATD's behalf with three Carriers, and to present proposals to ATD from those Carriers. If ATD accepted such a proposal, it would be responsible for payment of a commission to BirdDog. The Agreement did not specify the terms of any carrier contract that would be acceptable to ATD, *e.g.*, pricing parameters or the duration of the carrier contract. This Court specifically rejects BirdDog's suggestion that the Agreement's provision, "Final selection of a Carrier(s) is the CUSTOMER'S decision," required ATD to accept any carrier contract presented by BirdDog.[5] Accordingly, the Court rejects BirdDog's theory that it is entitled to its commission, having produced a carrier "ready, willing and able to meet ATD's express terms." There *were no* express

---

[5] BirdDog's argument would be more plausible, although still not persuasive, if it had presented carrier contract proposals to ATD from all three of the "Carriers" named in the Agreement.

7

terms agreed upon between ATD and BirdDog for any carrier contract, and this Court will not supply such terms.

## CONCLUSION

BirdDog brought this action in contract, suing ATD for damages based on its failure to execute a UPS carrier contract proposal presented to ATD by BirdDog. Under the Agreement between BirdDog and ATD, ATD was not required to execute the UPS carrier contract presented by BirdDog. ATD is entitled to judgment in its favor as a matter of law.

IT IS ORDERED:

1. Defendant ATD-American Co.'s Motion for Summary Judgment (Filing No. 45) is granted;

2. Plaintiff BirdDog Solutions, Inc.'s Motion for Partial Summary Judgment (Filing No. 37) is denied as moot; and

3. A separate Judgment will be entered.

DATED this 14th day of June, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge